**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**JORDACHE D.**

        **Plaintiff,**        **25-CV-00314-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND[1]

On February 3, 2022, plaintiff, at the age of 40, protectively filed claims for benefits under Titles II and XVI of the Social Security Act, alleging an onset date of June 1, 2019. Dkt. #5, pp. 249-263.

In a Disability Report filed on February 23, 2022, plaintiff alleged she was disabled due to Chrohn's disease, irritable bowel syndrome ("IBS"), acid reflux, insomnia, high blood pressure, depression, anxiety, and anemia. Dkt. #5, p. 289.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff's claim was denied initially and on reconsideration. Dkt. #5, pp. 140-159, 181-196. Plaintiff requested a hearing, and an in-person hearing before Administrative Law Judge ("ALJ") Bryce Baird was held on March 20, 2024. Dkt. #5, pp. 42-74. Plaintiff appeared with counsel. *Id.*

The ALJ asked plaintiff's counsel what impairments she believed caused plaintiff to be disabled, and counsel responded chronic abdominal pain, obesity, major depressive disorder, generalized anxiety/panic disorder, and edema[2] of the lower extremities. Dkt. #5, p. 47. She also stated that plaintiff had the non-severe impairment of high blood pressure. *Id.* Counsel agreed that no listing was met and that, based on plaintiff's age, no grid rule applied. Dkt. #5, pp. 47-48.

The ALJ then asked plaintiff her height and weight, and plaintiff testified that she is 5' 3" and weighs 290 pounds. Dkt. #5, p. 48. She testified that she has a driver's license but does not drive "due to her legs" and that it is hard for her to get around. *Id.*

Next, plaintiff stated that she is right-handed, completed the 11th grade, did not graduate from high school, and did not get a GED. Dkt. #5, p. 49. She lives in a rental house with her 11-year-old daughter and 17-year-old son. *Id.* She testified that her daughter's father pays the rent and bills, and her mother and father help with other expenses. Dkt. #5, pp. 49-50.

---

[2] "Edema" is the medical term for swelling caused by fluid trapped in the body's tissues. *See* https://my.clevelandclinic.org/health/diseases/12564-edema (last visited June 8, 2026).

The ALJ asked plaintiff about her work history, and plaintiff stated that she had been a private home health aide and last worked in 2019. Dkt. #5, p. 50. In that job, she was on her feet most of the time and had to lift people, turn them in bed, and put them into wheelchairs. Dkt. #5, p. 51. She also worked as a Certified Nursing Assistant ("CNA") at a facility where she had 10-15 patients at a time, and she was also on her feet all day and had to lift patients. Dkt. #5, pp. 51-52.

Upon examination by her counsel, plaintiff testified that she is unable to work because of her weight, and her legs feel like they are "on fire." Dkt. #5, p. 53. She needs help with daily activities and is barely able to eat due to IBS, which causes her to throw up, and she ends up in the hospital. *Id.* She is also unable to help her children. *Id.*

Next, plaintiff testified that she had fallen several times in the last week trying to do things; she has been told to keep her feet elevated above her heart; and she has been told she needs assistance walking, but her insurance was recently cancelled so she cannot get assistance. Dkt. #5, p. 54. She spends most of her time in her bedroom, and when she uses the bathroom, it is hard for her to wipe herself. *Id.*

Plaintiff also testified that she cannot be in the tub, cook, wash dishes, or be there for her kids if they have an event. *Id.* She takes medications for IBS, anxiety, and pain. *Id.* She stated that she has undergone numerous tests related to her abdominal pain, and it is currently being treated as IBS. Dkt. #5, pp. 54-55.

The ALJ noted to plaintiff's counsel that the medical records suggest that all tests which plaintiff underwent were negative, and counsel stated that the doctors had been unable to pinpoint the cause of plaintiff's abdominal pain and vomiting. Dkt. #5, p. 55.

The ALJ asked plaintiff about her symptoms, and she stated that she cannot digest food, she throws up after eating, and she has to go to the hospital to get an IV to make it stop. *Id.* The ALJ asked plaintiff, given that testimony, how she is still gaining weight, and plaintiff testified that her primary care doctor told her it is water weight. Dkt. #5, p. 56. Plaintiff stated that she takes Lasix, a diuretic. *Id.*

Plaintiff's counsel then asked plaintiff if she has side effects from her medications, and plaintiff stated that she has diarrhea, stomach cramps, sweating, and her psychiatric medications make her drowsy. Dkt. #5, pp. 56-57.

Next, plaintiff's counsel asked plaintiff how long she could sit, and plaintiff stated that she needs to stand up after sitting for 20-25 minutes because her legs lock up. Dkt. #5, p. 57. She can stand for about 10 minutes, only walk short distances, and she cannot bend down, stoop, squat, kneel, or crouch, and she could not carry a gallon of milk across the room. Dkt. #5, p. 58. The ALJ asked plaintiff what prevents her from lifting a gallon of milk, and she said body aches. Dkt. #5, p. 59.

Plaintiff then testified that she cannot do grocery shopping, and her neighbor does it for her. *Id.* She cannot work at a computer because she cannot sit for very long, she has difficulty rising from a chair, and her neighbor helps her get up in the morning and wash up. Dkt. #5, p. 60.

Plaintiff's counsel next asked plaintiff about her memory, and she stated she has trouble remembering things from a few years ago. *Id.* She also testified that it is difficult to focus and concentrate due to the pain, and she is unable to do chores. Dkt. #5, p. 61. Her doctor at Horizon told her to take her anxiety medicine if she feels overwhelmed, but she has not seen that doctor in several months because her insurance ran out. Dkt. #5, pp. 61-62. She also testified that she was discharged for missing too many appointments, and she could not go if she did not have a ride. Dkt. #5, pp. 62-63.

Next, plaintiff's counsel asked plaintiff about her mood, and plaintiff stated that she had been down and having panic attacks 3-4 times a week. Dkt. #5, p. 64. When she has a panic attack, her hands start shaking, she cries and gets angry. Dkt. #5, p. 65. Her anxiety makes her nervous around people, she does not go many places, and she would probably have an "episode" if she was in a crowded room. *Id.*

Plaintiff further testified that she cannot cook or clean and that her neighbor, her daughter's father, and her kids help her with those things. Dkt. #5, pp. 65-66. Plaintiff's counsel asked plaintiff about her daily activities, and plaintiff stated that she mostly stays in bed with her feet elevated. Dkt. #5, p. 66. On the average day, her neighbor comes

over and gets plaintiff's daughter off to school, makes plaintiff food, and helps her get dressed. *Id.*

The ALJ then noted that the records state that plaintiff uses cannabis regularly, and plaintiff testified that she got a medical marijuana card to help with her pain, but she does not use it regularly. Dkt. #5, p. 68.

Next, the ALJ heard from Jay Steinbrenner, a vocational expert ("VE"). The VE testified that plaintiff's past work as a personal care aide and CNA are semi-skilled, medium exertion jobs, possibly sometimes heavy as performed. Dkt. #5, pp. 69-70.

The ALJ then asked the VE to assume a person of plaintiff's age, education, and work history who can occasionally lift and carry up to 10 pounds and frequently carry up to 5 pounds; sit for up to 6 hours in an 8-hour day; stand or walk for up to 2 hours in an 8-hour day; occasionally climb ramps or stairs; never climb or use ladders, ropes, or scaffolds; occasionally balance, kneel, crouch, and crawl; who would be limited to simple, routine tasks that can be learned after a short demonstration or within 30 days and would not require production rate, pace work, or teamwork, such as on a production line; and the work would require doing the same tasks every day with little variation in location, hours, or tasks. Dkt. #5, p. 70.

The VE testified that such a person could not perform plaintiff's past work. Dkt. #5, p. 71. However, the VE testified that the person could perform the unskilled,

sedentary jobs of semiconductor bonding, charge account clerk, and telephone solicitor. *Id.*

The ALJ next asked the VE to consider a second hypothetical with the additional limitation that the person, due to symptoms of pain, would be off task for approximately 20% of the workday in addition to regularly scheduled breaks. Dkt. #5, pp. 71-72. The VE stated that such a person would not be able to perform any jobs in the national economy. Dkt. #5, p. 72.

As a third hypothetical, the ALJ asked the VE to consider the first hypothetical with the additional limitation that the person, due to symptoms of pain, would miss two days of work per month, including arriving late, leaving early, or missing work altogether. *Id.* The VE testified that there were no jobs in the national economy that such a person could perform. *Id.* The VE stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), except that his testimony regarding attendance, productivity, and the skill level for telephone solicitation was based on his experience. *Id.*

Plaintiff's counsel then asked the VE what the tolerances for off-task time and absenteeism are, and the VE testified that they are 15% and no more than two absences a month, respectively. Dkt. #5, p. 73.

On May 30, 2024, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #5, pp. 12-32. The Appeals Council denied plaintiff's request for review, Dkt. #5, pp. 6-11, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging

~ 8 ~

in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff has not engaged in substantial gainful activity since June 1, 2019, the alleged onset date; (2) plaintiff has the severe impairments of IBS, obesity, major depressive disorder, and generalized anxiety disorder;  (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform sedentary work[3] except: she may occasionally climb ramps and stairs

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

and never climb ladders, ropes, or scaffolds; she may occasionally balance, stoop, kneel, and crouch but never crawl; she is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days; she cannot work at a production rate or pace work; she cannot perform work that requires teamwork, such as on a production line; and she is limited to work that requires doing the same tasks every day with little variation in location, hours, or tasks;  (5) plaintiff is unable to perform any past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, she can perform jobs in the national economy of bonding semiconductors, charge account clerk, and telephone solicitor; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from June 1, 2019, to the date of the ALJ's decision. Dkt. #5, pp. 17-26.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### Challenges to the ALJ's Decision

Plaintiff makes three challenges to the ALJ's decision: (1) the ALJ erred at step two by finding that her impairment of venous reflux/edema was non-severe, and he failed to include leg-elevation limitations in her RFC; (2) the ALJ failed to include any limitations in interacting with others despite finding that plaintiff had deficits in that area;

and (3) the ALJ failed to properly address how plaintiff's frequent treatment and hospitalizations impacted her ability to maintain work attendance.

### *Plaintiff's Venous Reflux/Edema Impairment*

"At the second step of the sequential evaluation, an ALJ considers whether the claimant has at least one severe impairment or combination of impairments that meets the twelve-month durational requirement for establishing disability." *Louise F. v. Comm'r of Soc. Sec.*, Case # 1:20-cv-1905-DB, 2022 WL 1716900, at *7 (W.D.N.Y. Nov. 23, 2022) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is not "severe" if it "does not significantly limit a claimant's physical or mental capacity to perform basic work activities, which are defined as the abilities and aptitudes to do most jobs, and include physical functions such as walking, standing, sitting, lifting, carrying, and handling." *Id.* (citations omitted).

"Furthermore, it is Plaintiff's burden to demonstrate that she has a severe impairment." *Id.* at *8 (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). *See also Michael R. v. Comm'r of Soc. Sec.*, 19-CV-6836-MJR, 2021 WL 34665, at *4 (W.D.N.Y. Feb. 2, 2021) ("The claimant bears the burden of presenting evidence establishing severity.") (citations and internal quotation marks omitted).

Importantly, "[t]he mere presence of an impairment, or that a person has been diagnosed and/or treated for an impairment is not, by itself, sufficient to render a condition severe." *Louise F.*, 2022 WL 17176900, at *8 (citing *Prince v. Astrue*, 514 F.

~ 12 ~

App'x 18, 20 (2d Cir. 2013)). "'Instead, a claimant must demonstrate an impairment the significantly limits [her] physical or mental ability to perform basic work activities.'" *Id.* (quoting *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003)).

In addition, even if an ALJ errs at step two in assessing an impairment as non-severe, "where an ALJ proceeds past step two and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation process, any error at step two is harmless." *Id.* at *9 (citing *Reices-Colon v. Astrue*, 523 F. Appx. 796, 798 (2d Cir. 2013)). The Court must thus consider the ALJ's step-two finding in the context of his entire decision.

Having reviewed the record, the Court concludes that the ALJ did not err by finding plaintiff's lower extremity venous reflux/edema impairment to be non-severe.

First, the Court notes that plaintiff did not even list this impairment in the Disability Report that her counsel submitted in support of her applications for benefits. Dkt. #5, p. 289.

Second, in the sequential analysis, the ALJ acknowledged plaintiff's testimony that her legs felt like they are "on fire"; she spends most of her time in bed with her feet elevated; and she had received medical treatment for edema of her lower extremities. Dkt. #5, pp. 20-22. However, the ALJ concluded that the medical records did not support plaintiff's testimony regarding the severity of this impairment.

For example, while plaintiff was diagnosed with lower extremity edema and prescribed medications by her primary care providers, those medical records describe the edema as not acute, "intermittent," and some records of her visits do not mention edema in the physical assessments at all. Dkt. #7, pp, 433, 729, 786, 927, 932, 943, 1026, 1041, 1045, 1081. Plaintiff also reported that she took the medications on an "as needed" basis, and that the medications helped reduce the swelling. Dkt. #7, pp. 1023, 1026.

Further, as the ALJ noted, plaintiff was evaluated by a cardiologist on October 4, 2022—apparently out of a concern that her edema might be related to a heart condition—and the treatment records from that visit "indicate that the claimant had no edema in her extremities, and she had a normal gait without an assistive device." Dkt. #5, p. 22. The cardiologist also noted that plaintiff reported that after she started new medications, she "noticed significant improvement of her lower extremity edema." Dkt. #8, p. 248. He also stated, regarding her extremities: "No edema. No cyanosis or rubor. No clubbing." Dkt. #8, p. 251. Under "Assessment/Plan," the cardiologist stated: "She does not have any lower extremity edema." Dkt. #8, p. 253.

The ALJ also considered the report of consultative examiner Dr. Russell Lee, who examined plaintiff on June 14, 2022. Dkt. #5, p. 23. Dr. Lee noted plaintiff's complaint of lower extremity edema, Dkt. #7, p. 424, but upon examination he observed no edema in her extremities; she had full strength in both her upper and lower extremities;

~ 14 ~

she had full range of motion in her ankles; she appeared to be in no acute distress; she used no assistive device; and her gait, while very slow, was normal. Dkt. #7, pp. 425-427. Dr. Lee opined that plaintiff had moderate limitations in prolonged standing and walking great distances. Dkt. #7, p. 427. The ALJ found this opinion partially persuasive, an assessment which plaintiff does not challenge.

Moreover, apart from recommendations that plaintiff reduce her sodium intake and elevate her legs after prolonged sitting, standing, and walking, there is no indication in the medical records that the intermittent edema in plaintiff's legs would significantly limit her physical capacity to perform basic work activities, and plaintiff points to no such evidence other than her own testimony.

Of course, plaintiff "cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support [her] position." *Laura K. v. Comm'r of Soc. Sec.*, 23-CV-641 (JLS), 2025 WL 339006, at *6 (W.D.N.Y. Jan. 30, 2025) (citation omitted). Instead, plaintiff "must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*

The Court thus concludes that plaintiff has not carried her burden of demonstrating that her edema constitutes a severe impairment.

In the alternative, plaintiff argues that, even if the ALJ correctly assessed plaintiff's edema as non-severe, he nonetheless erred by not including in her RFC the need to elevate her legs. Dkt. #10-1, pp. 19-20. The Court disagrees.

No medical source in this matter opined that plaintiff needed to elevate her legs at will, for unlimited periods of time, and plaintiff points only to her testimony that it was her routine to lie in bed with her legs elevated for much of the day. Moreover, plaintiff's primary care providers advised plaintiff to elevate her legs only *after* periods of prolonged sitting, standing, and walking. Dkt. #7, p. 433.

As discussed above, Dr Lee found no edema in plaintiff's lower extremities and opined only that she had moderate limitations in prolonged standing and walking great distances. Dkt. #7, p. 427. By limiting plaintiff to sedentary work, however, the ALJ reasonably accounted for moderate difficulties in standing and walking. *Eric S. v. Comm'r of Soc. Sec,*, 7:23-cv-06357-KMK-GRJ, 2024 WL 4710183, at *4 (S.D.N.Y. Aug. 9, 2024) (RFC of reduced range of sedentary work aligned with opinion of consultative examiner that plaintiff had mild to moderate limitations in standing and walking), *report and recommendation adopted*, 2024 WL 4589680 (Oct. 27, 2024).

Notably, Dr. Lee did not opine that plaintiff was limited in sitting, which characterizes the sedentary work to which the ALJ limited plaintiff. See 20 C.F.R. § 404.1567(a).

~ 16 ~

The ALJ also considered the opinions of state agency consultants Drs. Gregory Zito and H. Miller, who opined, respectively, that plaintiff could stand, walk, and sit for four hours or six hours in an eight-hour workday. Dkt. #5, p. 24. The ALJ found these opinions generally persuasive but nonetheless imposed greater limitations in plaintiff's RFC. *Id.*

"It is fundamental law that a state agency consultant opinion may be given great weight if well-supported by the record." *Melinda J. C. v. Comm'r of Soc. Sec.*, CASE # 19-cv-01618, at *4 (W.D.N.Y. Feb. 26, 2021) (citations omitted).

The Court thus concludes that plaintiff has failed to carry her burden to show that the ALJ erred in not including a leg-elevation limitation in her RFC. *See Laura K.,* 2025 WL 339006, at *6 ("Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and Plaintiff fails to do so here.").

### Interacting With Others

Plaintiff's second argument is that, despite having found at step three that plaintiff had moderate limitations in interacting with others, "the ALJ's RFC contains no limitations as it pertains to interacting with others." Dkt. #10-1, p. 21. This is not true.

At step three of the sequential evaluation, the ALJ considered the "paragraph B" criteria and found, *inter alia*, that plaintiff had moderate limitations in interacting with others. Dkt. #5, p. 19. He acknowledged plaintiff's reported difficulty in

engaging in social activities, while also noting that she was able to get along with others, spend time with friends and family, deal appropriately with authority, and she had a good rapport with her medical providers, who described her as pleasant and cooperative. *Id.*

It is well established that a determination at step three is distinct from the RFC analysis at step four, and a limitation found at step three does not automatically translate into an identical finding in the RFC. *Darren J. v. Comm'r of Soc. Sec.*, CASE #:1:21-cv-00249 (JGW), 2024 WL 580346, at *4 (W.D.N.Y. Feb. 13, 2024) (citations omitted).

Despite this distinction, in formulating the RFC, the ALJ did account for plaintiff's limitations in interacting with others.

The ALJ considered the opinion of consultative psychiatric examiner Dr. Janine Ippolito, who examined plaintiff on June 14, 2022. Dkt. #5, p. 24. Dr. Ippolito diagnosed plaintiff with major depressive disorder and unspecified anxiety disorder with panic attacks but, as relevant here, she opined that plaintiff would be able to "interact adequately with supervisors, co-workers[,] and the public." Dkt. #7, p. 421.

The ALJ found Dr. Ippolito's opinion partially persuasive but found, more restrictively, that plaintiff's "mental impairments would limit her to simple work in a low stress environment, *with limited interaction with others*." Dkt. #5, p 25. The ALJ thus limited plaintiff to performing work that does not require teamwork and concluded that she

could perform the three unskilled sedentary jobs identified by the VE during the administrative hearing. Dkt. #5, pp. 19, 26.

Courts within the Second Circuit routinely hold that a "limitation to unskilled work can adequately account for a claimant's moderate limitations in interacting with others." *Justine G. v. Comm'r of Soc. Sec.*, 21-CV-6701S, 2023 WL 2595011, at *4 (W.D.N.Y. Mar. 22, 2023) (collecting cases).

The Court thus concludes that the ALJ adequately accounted for plaintiff's moderate limitation in interacting with others in the RFC.

### Ability to Maintain Work Attendance

Plaintiff's final argument is that the ALJ erred in failing to account for absenteeism in plaintiff's RFC given her history of hospitalizations for symptoms related to her IBS. Dkt. #10-1, pp. 24-28.

In formulating plaintiff's RFC, the ALJ noted plaintiff's multiple hospitalizations for abdominal pain, nausea, vomiting, and diarrhea. Dkt. #5, pp. 21-22. The ALJ also noted, however, that although plaintiff was diagnosed with colitis, numerous tests from 2019 to 2023—including colonoscopies, GI workups, diagnostic endoscopies, gastric emptying studies, and CT scans—yielded essentially normal results. *Id.* The ALJ

~ 19 ~

also noted that, after undergoing a G-POEM[4] procedure in August 2023, plaintiff reported in November 2023 that she no longer had any vomiting. Dkt. #5, p. 22; Dkt. #7, p. 997.

Further, following his physical examination of plaintiff in June 2022, Dr. Lee noted her history of IBS and hospital admissions, but he opined only that she had moderate limitations in prolonged standing and walking great distances; he did not opine as to a limitation in attendance at work. Dkt. #7, pp.424-430. The ALJ found this opinion partially persuasive and noted that it was not inconsistent with the RFC. Dkt. #5, p. 23.

The ALJ also relied on the opinions of two state agency consultants who reviewed plaintiff's medical records and opined that she was capable of performing light work; neither opined that plaintiff would be disabled due to absenteeism. Dkt. #5, pp. 24, 86-92, 131-134.

In concluding his RFC analysis, the ALJ observed that plaintiff "has had ongoing, chronic, gastrointestinal issues which cause intermittent pain, nausea and vomiting, and diarrhea, but he determined that "her examination findings did not support her allegations that she is unable to perform any work activity." Dkt. #5, p. 25.

---

[4] A gastric peroral endoscopic myotomy ("G-POEM") is an endoscopic procedure performed to relieve delayed gastric emptying and involves cutting the valve between the stomach and small intestine to permit food to move more easily from the stomach into the intestine. *See* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/g-poem-for-gastroparesis (last visited June 5, 2026).

Given the above analysis, this is thus not a case where the Court is left to speculate as to the ALJ's rationale. S*ee Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *5 (D. Conn. Dec. 1, 2017) (citations omitted).

Rather, the ALJ resolved genuine conflicts in the evidence as to the impact of plaintiff's impairments on her ability to work, which was within his discretion. *Louise F.*, 2022 WL 17176900, at *7.

The Court thus concludes that the ALJ's decision was supported by substantial evidence and that the Commissioner's determination must be upheld.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #14) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:       Buffalo, New York

             June 8, 2026


                                          _s/ H. Kenneth Schroeder, Jr._
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**